FILED
00 JUN 22 PM 1:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
JUN 22 2000

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ECONOMY PREFERRED INSURANCE COMPANY, } } } Plaintiff } v. } } BARNETT LYNN BANKS, } CHARLES EDWARD SAWYER, } and JUDY SAWYER TRAMMEL, } as Co-executors of the Estate of } Ouida Sawyer Banks, deceased, } } Defendants/Third Party } Plaintiffs, } } v. } } WILENA C. MARTIN, } } Third Party Defendant } } | CIVIL ACTION NO. 99-JEO-1215-S |

## MEMORANDUM OPINION

This case is before the court on the Motion for Summary Judgment filed on October 18, 1999, by defendants/third party plaintiffs Charles Edward Sawyer, and Judy Sawyer Trammell, Co-Executors of the Estate of Ouida Sawyer Banks ("Ouida Banks" or "Mrs. Banks"), deceased (collectively "defendants"), as well as by Barnett L. Banks ("Barnett Banks" or "Mr. Banks"), who has died since this action was filed (Doc. 15); defendants' Motion for Leave to File Amendment, filed January 26, 2000 (Doc. 26); Plaintiff's Objection to Defendants' Orally-Amended Motion for Summary Judgment, or,

in the Alternative, Plaintiff's Motion for Leave to File Motion For Summary Judgment on Issues Raised in Defendants' Amendment to Counterclaim, filed March 31, 2000 (Doc. 32); and defendants' Motion to Strike, filed April 6, 2000. (Doc. 34).[1]

## I. FACTS

On July 16, 1998, Mr. Banks had an automobile collision on Interstate 65 North in Montgomery County, Alabama. (Banks Depo. at 6).[2] Mr. Banks was driving a 1990 Lincoln Town Car owned by him and his wife, Ouida Banks, who was a passenger in the car at the time. (*Id.* at 6-7, 17). They were returning home from a trip to Florida. (*Id.* at 6). Mrs. Banks suffered from osteoporosis and had been confined to a wheelchair for three years, during which she had not driven. (*Id.* at 7).

Mr. Banks struck the rear of a vehicle driven by Wileana C. Martin ("Martin"), a third party defendant in this case. (*Id.* at 9). He testified that Martin's car appeared to slow down or stop in the left-hand lane of Interstate 65. (*Id.* at 8). He also testified that Martin did not use a turn signal before turning left into the median. (*Id.* at 9).

As a result of the collision, Mrs. Banks suffered nine broken ribs. (*Id.* at 10). According to Mr. Banks, she died on July 21, 1998, as a result of these injuries. (*Id.* at 10-11).

---

[1] References to "Doc. __" are to the documents as numbered by the clerk of court in the court's record of the case.

[2] The deposition of Barnett L. Banks is attached as Ex. A. to Doc. 31.

Before the collision, plaintiff Economy Preferred Insurance Company ("Economy") issued a Personal Automobile Liability Policy ("the policy") to Mr. and Mrs. Banks, bearing policy number PD 01-501404. (Doc. 1 at ¶ 8, Ex. A). The policy had a coverage period of March 25, 1998, to March 25, 1999. (*Id.*). After the collision, Mr. Banks filed a claim for uninsured motorist ("UM") benefits on behalf of the Estate of Ouida Banks. (Doc. 1 at ¶ 9).

The policy provides Uninsured Motorist Coverage as follows:

**Part IV: UNINSURED MOTORISTS COVERAGE**

> A. We will pay compensatory damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of bodily injury sustained by an **insured** and caused by an auto accident.

(*Id.* at ¶ 11, Ex. A at 7) (emphasis in original).

The policy defines "uninsured motor vehicle" as follows:

> C. **Uninsured motor vehicle** means a land motor vehicle . . . of any type:
>
> 1. to which no bodily injury liability bond or policy applies at the time of the accident.
>
> 2. to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury is less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which

>    **your covered auto** is principally garaged.
>
> 3. which is a hit and run vehicle whose operator or owner cannot be identified which hits:
>
>    a. you or any family member;
>
>    b. a vehicle which you or any **family member** are occupying; or
>
>    c. **your covered auto.**
>
> 4. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company denies coverage or is or becomes insolvent.
>
> However, **uninsured motor vehicle** does not include any vehicle or equipment:
>
>    a. owned or furnished or available for the regular use of you or any **family member**.

(*Id.* at Ex. A at 7-8). (Emphasis in original). The term "you" refers to the named insured. (*Id.* at Ex. A at 1).

## II. PROCEDURAL HISTORY

The plaintiff filed this action on May 14, 1999, seeking declaratory judgment as to the policy coverage. The plaintiff "contends that pursuant to the Policy provisions . . . there would be no coverage under the policy of insurance issued to Ouida Sawyer Banks

and Barnett L. Banks because Ouida Sawyer Banks was not 'legally entitled to recover' damages pursuant to [the policy]." (Doc. 1 at ¶ 12). Plaintiff also alleges that "under the theory of imputed negligence recognized by Alabama law, Ouida Sawyer Banks may not have been entitled to recover damages due to Barnett L. Banks' negligence, which proximately caused and/or contributed to cause the accident . . . ." (*Id.* at ¶ 12).

In response, defendants filed a Motion to Dismiss, Answer, and Counterclaim of Defendants, (Doc. 4), in which they allege that plaintiff owes them $200,000 pursuant to the UM coverage of the policy. (Doc. 4 at 3). On July 14, 1999, the court denied the defendants' Motion to Dismiss without prejudice. (Doc. 9).

On June 30, 1999, the defendants filed a Third Party Complaint against Martin, alleging that "the death of Ouida Sawyer Banks was the direct and proximate result of the negligent or wanton conduct" of Martin. (Doc. 7 at ¶ 1).

On October 18, 1999, the defendants filed a motion for summary judgment, claiming that, because Mrs. Banks could not control Mr. Banks's driving, any negligence on his part could not be imputed to her. (Doc. 15 at ¶¶ 1-3). The parties then briefed the issues.

On January 26, 2000, defendants filed a Motion for Leave to File Amendment seeking to amend their counterclaim. (Doc. 26). In it, the remaining defendants notified the court of Mr. Banks's death, and also stated that, upon review of the policy, they "realized that a basis for an uninsured motorist claim against [plaintiff] arose from the

5

existence of a claim against Barnett Lynn Banks by the representatives of the Estate of Ouida Sawyer Banks." (*Id.* at ¶¶ 1-2).

On March 21, 2000, a hearing was held on all pending motions. (Doc. 29). At the hearing, defendants orally amended their Motion for Summary Judgment, contending that they are entitled to recover UM benefits under the policy regardless of whether Mr. Banks or Martin caused the collision. (Doc. 32 at ¶ 2). In opposition, the plaintiff submitted on March 31, 2000, an objection or, in the alternative, a motion for leave to file a new summary judgment motion, (Doc. 32), as well as a memorandum brief, (Doc. 31), accompanied by several exhibits, including the transcript of a telephone interview with Martin. (Doc. 31 at Ex. B). In its brief, the plaintiff said its counsel was "in the process of obtaining a verified statement from Ms. Martin regarding the content of this transcribed statement," but no such statement has been filed. (*Id.* at 2).

In reply to the plaintiff, the defendants argue that Mr. Banks's unrefuted testimony shows that Martin's negligence caused the collision. (Doc. 33). In conjunction with this argument, the defendants filed a Motion to Strike, seeking the exclusion of Martin's telephone interview transcript as "unverified hearsay testimony," "highly prejudicial," "unreliable," and therefore inadmissible. (Doc. 34).

## III. DISCUSSION

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings and evidence indicate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment bears the initial burden of showing that no genuine issues exist. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and show that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the judge's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the nonmovant need not be given the benefit of

every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**B.     Defendants' Original Motion for Summary Judgment**

Defendants initially moved for summary judgment on plaintiff's complaint for declaratory judgment on the ground that Mr. Banks's negligence, if any, could not be imputed to Mrs. Banks because Mrs. Banks had no control over him. Since the court finds below that Martin's sole negligence caused the collision, the defendants' motion for summary judgment on this issue is moot.

**C.     Defendants' Motion for Leave to File Amendment**

The defendants filed a Motion for Leave to File Amendment on January 26, 2000, (Doc. 26), in which they stated that, after the death of Barnett Banks, they, as remaining executors of Mrs. Banks's estate, "re-examined their position under the policy . . . and realized that a basis for an uninsured motorist claim against the [plaintiff] arose from the existence of a claim against Barnett Lynn Banks by the representatives of the Estate of Ouida Sawyer Banks." (*Id.* at ¶ 2). The defendants move to include the following alternative claim for UM benefits allegedly due to Mrs. Banks's estate:

> in the event the facts of this case should demonstrate that Barnett L. Banks, now deceased, was negligent in his operation of the vehicle in which Ouida Sawyer Banks was a passenger and that that negligence proximately resulted in the death of Ouida Sawyer Banks, the remaining executors of [Mrs. Banks's estate] have a good and valid claim against Barnett L. Banks for damages for causing said death and that, under Alabama law and the case of *Hogan v. State Farm Mutual Automobile Ins. Co.*, 730 So. 2d 1157

(Ala. 1998) [*overruled on other grounds*, *Williamson v. Indianapolis Life Ins. Co.*, 741 So.2d 1057 (Ala. 1999)], Barnett L. Banks shall be considered an uninsured motorist for the purposes of recovery under the uninsured motorist coverage of the policies covering Ouida Sawyer Banks at the time of the accident which resulted in her death.

(Doc. 23 at ¶ 2). The defendants also propose the addition of the following claim:

In the event that the counter-defendant refuses to acknowledge responsibility under the uninsured motorist coverage provisions of its policy to pay benefits pursuant to the claims made by the Co-Executors of [Mrs. Banks's estate], plaintiff/counter-defendant is guilty of bad faith in such refusal and the defendant/counter-plaintiffs pray for such punitive damages as may be appropriate to punish said defendant for such exercise of bad faith in refusing to pay those policy provisions which are not reasonably defensable [sic].

(*Id*. at ¶ 3).

Neither amendment is permissible under Rule 15(a) of the *Federal Rules of Civil Procedure*. Under F. R. Civ. P. 15(a), "leave [to amend a party's pleading] shall be freely given when justice so requires." Whether to grant leave to amend is within the sound discretion of the trial court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be "freely given." *Id*.

In view of the court's finding, set forth below, that Martin's sole negligence caused the collision, the first of these proposed amendments would be futile. The motion

9

with respect to that proposed amendment is therefore due to be denied on that basis. Further, both proposed amendments are due to be denied on the basis of undue delay.

The defendants filed a counterclaim on May 26, 1999. (Doc. 4). It was not until January 14, 2000 that they evidenced an intent to amend the counterclaim (Doc. 23) and not until January, 26, 2000 that they properly petitioned for leave to amend the counterclaim. (Doc. 26). Under the latest scheduling order in the case (Doc. 18), dispositive motions were due on January 14, 2000, discovery was to be completed by December 15, 1999 and the parties were to be ready for trial by April 17, 2000. In attempting to explain why they did not amend the counterclaim earlier, the defendants state that, after Mr. Barnett's death, they "re-examined their position under the policy . . . and realized that a basis for an uninsured motorist claim against [plaintiff] arose out of a claim against Barnett Lynn Banks by the representatives of [Mrs. Banks's estate]." (Doc. 26 at ¶ 2). There is no stated explanation for the defendants' delay in filing the proposed bad faith claim. The petition for leave to amend is due to be denied because the case was in an advanced stage when the amendment was proposed and there is not adequate reason offered for the undue delay.

### D.   Defendants's Motion to Strike

In the course of opposing the defendants' arguments, the plaintiff has offered an unverified transcript of a telephone interview with Martin. (Doc. 31 at Ex. B). The defendants move to strike it, arguing that the transcript is unverified hearsay testimony

with respect to which they have had no right of cross-examination or right to be present when the statement was taken, that it was taken by a representative of the plaintiff, that the taker leads the witness, that several answers are indicated to be inaudible, and that it is highly prejudicial. The court agrees that the transcript constitutes inadmissible hearsay, and notes that the plaintiff has not argued otherwise.[3]

### E. Defendant's Orally-Amended Motion for Summary Judgment; Plaintiff's Motion for Leave to File Motion for Summary Judgment on Issues Raised in Defendants' Answer to Counterclaim

At the last hearing in this case, the defendants orally amended their motion for summary judgment to ask for judgment on the proposed amendment to their counterclaim. The court, however, has disallowed the proposed amendment hereinabove, as both unduly delayed and futile. (Doc. 32 at ¶ 2). The plaintiff's request for a chance to submit an amended motion for summary judgment with respect to the proposed new claim is therefore moot. (*Id.* at ¶ 4).

---

[3]The court also notes that, even if Martin's interview transcript were admissible, it would ultimately be of limited help to the plaintiffs. In it, Martin admits that she was traveling in the right lane of the interstate when she moved into the left lane in order to then make a U-turn across the median in order to travel the opposite direction. (Doc. 31, Ex. B at 2-3). She claims that she had already made her turn and was off the roadway before the collision, but she also claims that Mr. Banks's car hit hers directly in the rear. (*Id.* at 4-5). Further, she alleges that she was actually going 45 m.p.h. when she started to turn across the median. (*Id.* at 4). She cannot remember how far Mr. Banks's car was behind hers, although she admitted that she checked her rearview mirror before she turned. (*Id.* at 6). In response to a question as to whether she had ever been in "an auto accident like this" she said that she had been in another collision, but that it was "not like this. It wasn't my fault at all." (*Id.* at 7). She does claim that her brake lights worked and that she activated her turn signal before moving from the right lane to the left lane to begin her U-turn across the median. The court notes, however, that she does not claim to have applied the brakes before turning. The court also notes that, as a matter of common sense, a left-turn signal prior to a lane change from right to left lanes would not normally alert even the most jaded driver that the lane-changer would then attempt a U-turn on a busy and dangerous limited access road such as an interstate highway.

The plaintiff's Motion for Leave to File Motion for Summary Judgment on Issues Raised in Defendant's Answer to Counterclaim, (Doc. 32), is moot, as it is asserted only in the event that the court allows the defendants to amend their counterclaim. As is set forth above, the court has rejected the proposed amendments.

F.  **Defendants' Motion for Summary Judgment as to Whether the Collision was Caused by the Sole Negligence of Martin**

In arguing their orally amended motion for summary judgment, the defendants contend that the plaintiff "ha[s] not really addressed . . . the basis for the original summary judgment [motion]." (Doc. 33 at ¶ 1). They argue that "[t]he theory of the original summary judgment [motion] was that the third party defendant Wileana C. Martin was negligent and caused the accident resulting in the death of Ouida Sawyer Banks. Wileana C. Martin was uninsured and Ouida Sawyer Banks was not guilty of any contributory negligence." (*Id.*). The defendants further argue that

> [t]hese facts were established by the deposition testimony of [Mr. Banks] prior to his death unless placed in issue by testimony of some witness to the accident who could eliminate the evidence of negligence per se on the part of Wileana C. Martin. No such evidence has been produced and clearly the plaintiff is entitled to summary judgment with respect to the liability for the negligence of Wileana C. Martin. It is clearly illegal and clearly negligence to slow down to turn across the median of Interstate 65.

(Doc. 33 at ¶ 2).

The defendants' original summary judgment motion actually focuses on a different issue: whether Mr. Banks's negligence, if any, may be imputed to Mrs. Banks. (Doc. 15

12

at 2). Even so, a motion for summary judgment has been properly raised as to whether the collision was caused by the sole negligence of Martin--Mr. Banks testified to this effect early in the case, it has since become apparent that the plaintiff is unable to offer admissible evidence to the contrary, in spite of its stated intent to do so.[4] (Doc. 31, n.3).

The defendants have offered the deposition testimony of Mr. Banks to show that Martin was negligent and that her negligence caused the collision. The plaintiff has offered no admissible evidence to contradict Mr. Banks's deposition testimony. They have offered only an unverified transcript of a telephone interview with Martin, which the court hereinabove has determined to be inadmissible. The plaintiff offered portions of Mr. Banks's testimony in opposition to the plaintiffs' original motion for summary judgment, but these portions do not address the issue of whether the collision was caused by Martin's sole negligence. (Doc. 19 at 2, 4, Doc. 31 at 2-4 Ex. A).

The court has examined the deposition of Mr. Banks. According to his version of events, Martin's actions caused the collision. He states that he was traveling behind Martin in the left lane of Interstate 65, going north, between Birmingham and Montgomery on the day of the collision. (Doc. 31, Ex. A at 8-9). The weather was perfect, traffic was heavy in both lanes, and he was traveling at about 62 or 63 m.p.h. in an area where the speed limit was 70 m.p.h.. (*Id.* at 12-13, 17-18). Martin stopped or

---

[4] The court also notes that it has been almost three months since the plaintiff stated its intent to file a verified statement from Martin, but there is still no sign of such a statement.

13

slowed down in the roadway, slightly veering left, as if to make a U-turn across the median, with no visible brake lights or turn signal operating. (*Id*. at 8-9). Mr. Banks's car collided with the back of Martin's, which collision Mr. Banks says that he would have probably been able to avoid if he had seen a turn signal or brake lights. (*Id*. at 9). The car following Mr. Banks almost hit the back of his car as well, and had to go into the median to avoid a collision. (*Id*. at 20). The right lane next to him, he said, was occupied by cars at the time of the collision, preventing him from swerving right to avoid the collision. (*Id*. at 24). He states that he was following Martin's car by the "normal length" of about a car and a half. (*Id*. at 26). Mr. Banks said he was aware that the officer who wrote up the accident report stated that the Banks car was following Martin's too closely to stop, but also said that the officer barely spoke to him at all at the scene. (*Id*. at 26). The accident report is not a part of the record in this case.

It appears that the only admissible record evidence about this collision is the testimony, summarized above, of Mr. Banks. That undisputed testimony shows that Martin caused the collision by stopping, without activating any visible signal, in the middle of an interstate highway lane to make an illegal U-turn across the median. *See* Ala. Code § 32-5A-90 (1989). Mr. Banks testified that, had Martin's brake lights or turn signal been activated, he probably could have stopped in sufficient time to avoid the collision. No record evidence disputes this.

The record evidence thus indicates that Martin caused the collision and that it was not caused by any contributory negligence on the part of Mr. Banks. The defendants' motion for summary judgment on this issue is therefore due to be granted. Having established that Martin's negligence caused the collision giving rise to this case, the court will conduct further proceedings to determine damages at a later date.

## IV. CONCLUSION

Based on the foregoing, the court finds that (1) the defendant's original motion for summary judgment on the issue of whether any negligence of Mr. Banks could be imputed to Mrs. Banks is moot, (2) the defendants' Motion for Leave to File Amendment is due to be denied, (3) the defendants' motion to strike Martin's unverified interview transcript is due to be granted (4) the defendants' orally amended motion for summary judgment is moot, (5) the plaintiff's Motion for Leave to File Motion for Summary Judgment on Issues Raised in Defendants' Answer to Counterclaim is moot and (6) the defendants' motion for summary judgment on the issue of whether Martin's sole negligence caused the collision giving rise to this case is due to be granted. An appropriate order will be entered.

**DONE** this 22nd day of June, 2000.

JOHN E. OTT
United States Magistrate Judge